**In re TERRANCE P.**

[Cite as *In re Terrance P.* (1998), 129 Ohio App.3d 418.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–97–1269.

Decided Aug. 14, 1998.

*Pamela A. Conger–Cox,* for appellant.

GLASSER, Judge.

This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which found appellant Terrance P. to be a delinquent child by committing an act which, if committed by an adult, would constitute receiving stolen property. Following his adjudication, appellant was committed to the Ohio Department of Youth Services for an indefinite term of six months to a maximum period not to exceed the age of twenty-one. Appellant's appeal raises the following assignments of error:

"Assignment of Error I

"Terrance [P.]'s admissions were not knowing, intelligent and voluntary, in violation of the Due Process Clause of the United States Constitution, Sections 10 and 16, Article I of the Ohio Constitution, and Juv.R. 29, where the trial court elicited admissions from him prior to explaining his rights and ascertaining whether he both understood and waived those rights.

"Assignment of Error II

"The trial court committed reversible error when it adjudicated Terrance [P.] delinquent based upon an equivocal admission to receiving stolen property, in violation of the Fifth and Fourteenth Amendments to the United States Constitu-

tion, Sections 10 and 16, Article I of the Ohio Constitution and Juvenile Rule 29(C).

"Assignment of Error III

"Terrance [P.] was deprived of his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution, R.C. 2151.352, and Juv.R. 4(A) and 29(B) when his attorney (1) cross-examined him during the adjudication proceedings and elicited incriminating responses; and (2) made only disparaging remarks about him during the sentencing hearing."

The state has not filed a brief in this matter.

The relevant facts of this case are as follows. On May 13, 1997, a complaint in delinquency was filed in the lower court charging appellant, who was then fourteen years old, with receiving stolen property, an automobile. Previous complaints had also been filed against appellant, charging him with aggravated burglary (case No. 96039697) and violating the safe school ordinance (case No. 97043790). On May 13, 1997, a detention hearing on all three complaints was held before magistrate John Yerman. At that hearing, the magistrate informed appellant of the charges against him and of his constitutional rights. The magistrate further entered a denial on all charges on behalf of appellant and appointed counsel to represent him.

The cases then proceeded to a hearing on disposition on May 22, 1997 before magistrate Geoff Waggoner. At that hearing, appellant was represented by attorney Jeremiah Hoffer. Initially, the prosecutor relayed to the court that appellant would be withdrawing his denials and would be admitting to the charges of receiving stolen property and violating the safe school ordinance. She further recommended that the charge of burglary be reduced to assault. The court then addressed appellant as follows:

"THE COURT: Is that what you want to do Terrance, admit to the charge of violation of safe school ordinance?

"MR. [P.]: Yes.

"THE COURT: To receiving stolen property and to assault?

"MR. [P.]: Yes.

"THE COURT: The receiving stolen property charge being on or about May 13th, 1997, in Lucas County, Ohio, that you did receive or retain or dispose of a 1986 Lincoln car belonging to Brian Jackson.

"That you were driving that car at Putnam and Batavia, in Toledo, Lucas County, Ohio, knowing or having reasonable cause to believe that car was stolen.

"MR. [P.]: Yes.

"THE COURT: The charge of violation of safe school ordinance being that on or about April 28th, 1997, in Lucas County, Ohio, that you did disrupt, disturb or interfere with the activity conducted at Jefferson Center by after school, engaging in a fight, assaulting another student.

"MR. HOFFER: Your Honor—

"MRS. JONES: It didn't happen at school.

"MR. HOFFER: It didn't happen at school, it happened at the bus stop.

"THE COURT: Yeah, I'll get to that.

"MR. HOFFER: Okay.

"THE COURT: And 4/20/97, at 1:40, 1:45 p.m. At Fulton and Kenilworth, did assault Victron Moore after he got off this bus after school.

"MR. [P.]: Yes.

"THE COURT: Is that what you wanted to admit to?

"MR. [P.]: Yes.

"THE COURT: And the assault charge, Terrance, being that on or about December 12th, 1996, in Lucas County, Ohio, and what would the amendment be to?

"MS. OSGOOD: That he struck Shirley Nunne and the address is still the same, 2443 Franklin, in Toledo, Lucas County, Ohio.

"THE COURT: That he struck her where with what?

"MS. OSGOOD: In the face with his hand, Your Honor, is the allegation.

"THE COURT: Is that what you want to admit to, Terrance, that on December 12th, '96, in Lucas County, Ohio, that you did strike Shirley Nunne in the face?

"MR. [P.]: Yes.

"THE COURT: With your hand? Is that what you wanted to admit to?

"MR. [P.]: Yes."

The magistrate then informed appellant of the possible penalties applicable to each charge if he were to admit to the charges and be found delinquent. The magistrate further instructed appellant of the rights that he would be relinquishing if he were to admit to the charges. Specifically, the magistrate told appellant that by admitting to the charges he would be giving up his right to a trial, to have the state prove that he committed the offenses beyond a reasonable doubt, to confront the witnesses against him, to call witnesses in his own defense, and to

remain silent. The magistrate further asked appellant if he understood that by admitting to the charges he was giving up these rights, to which appellant answered "yes." The magistrate then continued:

"THE COURT: Did anyone force you or threaten you or promise you anything for you to admit and give up those rights today?

"MR. [P.]: No, sir.

"THE COURT: Do you have a clear mind, clear head today and know what you're saying and what you're doing here in Court?

"MR. [P.]: Yes, sir.

"THE COURT: Do you understand everything that's been said?

"MR. [P.]: Yes, sir.

"THE COURT: Are you under the influence of any drugs or any alcohol?

"MR. [P.]: No, sir."

The magistrate then proceeded to question appellant about the facts of the charges. With regard to the receiving stolen property charge, the following occurred:

"THE COURT: * * * In regards to receiving stolen property, Terrance, how old were you on May 13th of '97?

"MR. [P.]: Fourteen.

"THE COURT: And on or about that date, Terrance, did something happen concerning a 1986 Lincoln car belonging to Brian Jackson? Something happen concerning a Lincoln car that belongs to Brian Jackson?

"MR. [P.]: Yes.

"THE COURT: What happened?

"MR. [P.]: We was just sitting, me and my—guy friend Michael Thomas. Police rode passed and then they made a U-turn, came back passed, made a U-turn and then we was getting out the car and getting ready to go into the house and then they told us to come here. They said the car was stolen.

"THE COURT: Were you driving that car?

"MR. [P.]: Yes.

"THE COURT: When you were driving that car did you know or should you know that car was stolen?

"MR. [P.]: Yes, sir.

"THE COURT: And how should you have known that it was stolen?

"MR. [P.]: I really didn't know it was stolen because I looked in the glove compartment and I seen the insurance papers, so—

"THE COURT: How should you have known it was stolen?

"MR. HOFFER [APPELLANT'S ATTORNEY]: May I inquire, Your Honor?

"THE COURT: Mr. Hoffer.

"MR. HOFFER: Victor [*sic*], did you give some guy $20.00 to quote, rent the car?

"MR. [P.]: Yes.

"MR. HOFFER: And then you couldn't find him, could you?

"MR. [P.]: No, sir.

"MR. HOFFER: You kept that car for five days, didn't you?

"MR. [P.]: Yes, sir.

"MR. HOFFER: Did that seem kind of strange to you, did it?

"MR. [P.]: Yes.

"MR. HOFFER: You should have known that it wasn't his car if he was going to give it to you for twenty bucks a day and then not come back and get it?

"MR. [P.]: Yes.

"THE COURT: Was that in Lucas County, Ohio?

"MR. [P.]: Yes, sir.

"THE COURT: Satisfied with the elements, Your Honor [*sic*]?

"MR. HOFFER: Yes, Your Honor."

The magistrate then found that there was a factual basis for the plea and that it was made knowingly, voluntarily, and intelligently.

The assignments of error are interrelated and, therefore, will be addressed together. Appellant asserts in his first assignment of error that his admissions were not knowing, intelligent, or voluntary in that the court obtained the admissions twice before explaining the rights waived upon such an admission. Appellant argues under the second assignment of error that the record demonstrates that he did not understand the knowledge element of the crime of receiving stolen property and that the court therefore failed to comply with Juv.R. 29 in accepting his plea and in adjudicating him delinquent on that basis. Finally, under his third assignment of error, appellant contends that he received the ineffective assistance of counsel when his own counsel elicited incriminating responses from him when it became clear that he contested the knowledge element of the crime of receiving stolen property.

Juv.R. 29(D) provides that before accepting an admission, a juvenile court must address the party personally and determine that:

"(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;

"(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing."

■■■■ An admission in a delinquency proceeding is analogous to a guilty plea made by an adult in a criminal proceeding pursuant to Crim.R. 11(C). *In re Christopher R.* (1995), 101 Ohio App.3d 245, 247, 655 N.E.2d 280, 281–282. The admission therefore constitutes " 'a waiver of rights to challenge the allegations [in the complaint].' " *Id.*, quoting *State v. Penrod* (1989), 62 Ohio App.3d 720, 723, 577 N.E.2d 424, 425. In accepting a juvenile's admission in a delinquency case, the trial court must substantially comply with the specific requirements of Juv.R. 29(D). *Christopher* at 247–248, 655 N.E.2d at 281–282. In determining whether an admission is made knowingly, intelligently, and voluntarily, courts look to the totality of the circumstances. *In re Flynn* (1995), 101 Ohio App.3d 778, 782, 656 N.E.2d 737, 739–740.

■■■■ In the present case, the court's initial questioning of appellant, as set forth above, was an attempt to ascertain whether appellant understood the nature of the allegations to which he wanted to admit. In answering the court's questions, appellant confirmed that those were the charges to which he wanted to admit. Juv.R. 29(D) states that the court shall not "accept" an admission without following the procedures set forth therein. By questioning appellant in this manner, the court did not accept appellant's admissions but attempted to determine if appellant was making the admissions voluntarily with the understanding of the nature of the allegations. Accordingly, the initial questioning alone did not violate appellant's constitutional rights or Juv.R. 29(D) and the first assignment of error is not well taken.

■■■■ Nevertheless, the court's subsequent questioning of appellant revealed that appellant did not understand and in fact contested the knowledge element of the crime of receiving stolen property. Initially, appellant stated that he knew or should have known that the car was stolen; however, he then said that he did not know that the car was stolen because the insurance papers were in the glove compartment. This should have made the court question whether appellant, a fourteen-year-old boy, truly understood the rights he was waiving and should have prompted the court to question appellant further. Instead, the court then allowed appellant's own counsel to cross-examine him and elicit incriminating responses.

▮▮▮ The Supreme Court of Ohio has adopted a two-part test for determining whether a defendant has received the ineffective assistance of counsel. An appellant must show that his counsel's representation fell below an objective standard of reasonableness by presenting evidence of specific acts or omissions. *Strickland v. Washington* (1984), 466 U.S. 668, 688, 104 S.Ct. 2052, 2064–2065, 80 L.Ed.2d 674, 693–694; *State v. Bradley* (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373, 379–380. In doing so, appellant must demonstrate that his defense was prejudiced by counsel's actions or omissions to such an extent that there is a reasonable probability that, but for counsel's errors, a different result would have occurred. *Strickland, supra,* at 691–696, 104 S.Ct. at 2066–2069, 80 L.Ed.2d at 695–699; *Bradley, supra,* paragraph two of the syllabus. In Ohio, a properly licensed attorney is presumed competent, and the burden is on the appellant to show counsel's ineffectiveness. *State v. Hamblin* (1988), 37 Ohio St.3d 153, 524 N.E.2d 476. In the present case, it is clear that appellant's trial counsel was not acting as his counsel in the proceedings below. In particular, we note that after appellant's counsel obtained the incriminating responses from appellant, the court called appellant's counsel "Your Honor" and asked if he was satisfied with the elements. Absent this testimony and given that appellant challenged the state's claim that he knew or should have known that the car was stolen, the record does not affirmatively demonstrate that appellant's admission to the charge of receiving stolen property was knowing, intelligent, and voluntary. Accordingly, the court erred in accepting the admission and in finding appellant delinquent on the basis of the receiving stolen property charge. The second and third assignments of error are well taken.

On consideration whereof, the court finds that appellant was prejudiced and prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is reversed. This cause is remanded for further proceedings consistent with this opinion. Court costs of-this appeal are assessed to appellee.

*Judgment reversed*
*and cause remanded.*

MELVIN L. RESNICK and SHERCK, JJ., concur.