JOURNAL ENTRY AND OPINION
Laura Graves appeals from a judgment of the Juvenile division of the common pleas court awarding permanent custody of her child, Rodeisha Goolsby, to the Cuyahoga County Department of Children and Family Services (CCDCFS) and awarding legal custody of her child, Rhianna Goolsby, to Graves' maternal cousin, Barbara Emerson. On appeal, Graves raises four issues for our consideration: whether the court properly allowed expert testimony, whether an award of permanent custody is in Rodeisha's best interest, whether the court should have held separate adjudicatory and dispositional hearings for Rhianna, and whether she received effective assistance of counsel. After careful review of these concerns, we affirm the judgment of the trial court.
The history of the case reveals that in 1997, the court adjudicated Rodeisha to be a neglected child, and placed her in the temporary custody of CCDCFS. On July 6, 1999, the court held a hearing on Rodeisha regarding the agency's motion to modify temporary custody to permanent custody. The court heard from Lisa Garner, a social worker, who testified about the mother's case plan and the mother's failure to complete all of her courses. She also testified about the agency's reunification attempt, which was halted due to Graves' loss of housing and relapse into drug use. In addition, she testified about the foster care Rhianna had received from Gloria Motley since April of 1998, and the bond between Rodeisha and her entire foster family. From the briefs of counsel, we are able to infer that Dr. McDavid, Rodeisha's pediatrician and a specialist in child behavioral problems, and Dr. Needlemen, also a pediatric specialist, testified at the hearing. However, because of an inadequate record, their testimony is not before us and we are left to consider this important appeal without it.
After CCDCFS rested its case, the court continued the hearing. Eight months later, on March 21, 2000, the court resumed the hearing and heard testimony from four extended family members, all of whom stated that the child belonged with the extended family. Denielle Caldwell, a maternal cousin, testified that all of Graves' children were with family members and that she would be willing to take legal custody of Rodeisha. She also testified that she had been visiting Rodeisha and that Rodeisha referred to Motely and her children as her mommy and her brothers and sisters. Graves testified that she was comfortable with Rodeisha being placed in the custody of the Caldwells, although she admitted that she had previously informed CCDCFS that she did not want Rodeisha placed with the Caldwells. She also admitted that in the two years since Rodeisha had been removed from her care she had not completed her case plan. She further admitted that she did not have the financial means or necessary housing to take custody of Rodeisha herself and she also admitted that she recently had two positive urine screens.
In addition, the Guardian ad litem for the children called Dr. Gaskins, a family practitioner with certain psycho-geriatric training and some counseling experience, who was the primary care physician for Rodeisha and her foster family. She described the relationship between Rodeisha and her foster mother as excellent. She further testified that when asked about Motley, Rodeisha referred to her as mom. She stated that she believed that Motely was the only person Rodeisha knew as her mother. Graves' counsel objected twice when the guardian ad litem asked Dr. Gaskins the following question:
 MR. FEUER: What kind of effect do you think it would have on the child, removing the child from her foster home?
 MR. HYLAND: Objection, Your Honor. We're calling for a psychological —
THE COURT: Overruled.
 DR. GASKINS: The bottom line is, I think that most medical professionals will say that the child's personality, the child's foundation —
MR. HYLAND: Objection.
THE COURT: Overruled. (Tr. 33; 3/21/00)
No further objections were raised and Dr. Gaskins subsequently expressed her opinion that in light of Rodeisha's behavioral problems stemming from her traumatic experience with two unsuccessful foster homes prior to Motley, a further change in placement would be traumatic to Rodeisha and could cause permanent damage to the child.
After concluding the hearing for Rodeisha, the court initially noted that while an adjudicatory hearing upon a complaint by CCDCFS for permanent custody of Rhianna was also scheduled for that day, the court indicated it would reschedule it for another date. Next, however, the record shows the court announced that it would conduct the hearing for Rhianna as scheduled. At that point, CCDCFS moved to amend its complaint, changing the disposition from permanent custody for the agency to legal custody to a maternal cousin. The transcript of the hearing then shows the following exchanges:
 MR. GRANITO: Your Honor, I discussed this matter with my client, and she's willing to admit to the amended complaint.
 THE COURT: All right. * * * Ms. Graves, you you are aware of the fact, are you not, that you have a right to a trial in this matter, [at] which time the burden would be on Children's Services to prove by clear and convincing evidence what they say in their complaint. In order to do that, they'd have to call witnesses, present evidence. You'd have a right, through your attorney, to confront and cross-examine those witnesses. You could call your own witnesses. You could be a witness yourself if you wanted to be, or you could remain silent. But if you make an admission here today, we will not be hearing having a trial. Do you understand that?
MS. GRAVES: Yes, sir.
 THE COURT: Any promises or threats made in order to get you to admit to this?
MS. GRAVES: No, sir.
 THE COURT: And you agree with your attorney, in fact, you admit to the complaint as it has been amended?
MS. GRAVES: Now that it's been modified, yes.
 THE COURT: As it's been amended. You agree to it at that point.
MS. GRAVES: Yes.
 THE COURT: All right. And you also agree to the to the disposition of the case, that being a granting of legal custody to Barbara Emerson? (Emphasis added.)
MS. GRAVES: Yes, I'm comfortable with it.
* * *
 THE COURT: And the GAL has no problem with that? All right. The court at this time will find that child to be dependent and neglected. I'm going to grant legal custody of the minor child to the relative, Barbara Emerson, with visitation to the mother once per week as agreed by the parties. * * * (Tr. 108-114; 3/21/00)
Throughout the proceeding, Graves' counsel did not raise any objections to the manner the trial court conducted the proceeding regarding Rhianna.
Pursuant to the hearing on March 21, 2000, the court awarded permanent custody of Rodeisha to CCDCFS and legal custody of Rhianna to Barbara Emerson, with weekly visitation as agreed to by the parties. Graves then appealed both cases and we, sua sponte, consolidated them for review.
On appeal, Graves presents four assignments of error, two relating to the trial court's granting of permanent custody of Rodeisha to CCDCFS and two relating to legal custody of Rhianna. Her first assignment of error states:
 THE JUVENILE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY ALLOWING DR. SONYA GASKINS TO TESTIFY AS AN EXPERT ABOUT PSYCHOLOGICAL ISSUES WHEN SHE WAS NOT PROPERLY QUALIFIED AS AN EXPERT IN THE SUBJECT AREA.
Graves contends that Dr. Gaskins is not an expert in child psychology and therefore the trial court prejudiced her by admitting Dr. Gaskins' testimony regarding the negative effect on Rodeisha if removed from her foster family. CCDCFS argues that Graves is barred from raising this issue on appeal because her counsel did not raise the specific ground in a timely objection at trial. CCDCFS further argues that Dr. Gaskins' testimony could have been admissible under Evid.R. 701 as lay witness testimony and furthermore, she possesses indeed sufficient experience and training to qualify as an expert to testify about the psychological effect of a change of placement on Rodeisha.
The issue then concerns whether the trial court prejudiced Graves by admitting Dr. Gaskins' testimony on the psychological issues concerning a change of placement for Rodeisha.
Evid.R. 103(A)(1) provides that a claim of error in the admission of evidence cannot be raised unless the aggrieved party timely objects and states the specific ground of objection, if not apparent from the context in a timely objection at trial.
In State v. Jells (1990), 53 Ohio St.3d 22, 28, the court applied Evid.R. 701 to the testimony of an expert witness:
 Appellant claims that the testimony of Officer Yonkers did not rise to the level of reasonable scientific certainty nor did his testimony assist the trier of fact. Essentially, appellant argues that the testimony offered by Officer Yonkers was unqualified expert testimony. We disagree. Instead we find that the testimony was merely lay opinion testimony. Evid. R. 701 permits opinion testimony of a lay witness if the opinion or inferences are: "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."
A review of the record shows that Graves' trial counsel never objected to Dr. Gaskins' qualifications to testify regarding the psychological issues, when examined by the guardian ad litem. (Tr.33; 3/21/00.) Subsequently, when CCDCFS revisited the issue of the effect a change of replacement might have on Rodeisha, her counsel did not raise any objections whatsoever. (Tr.43; 3/21/00.) Accordingly, this matter is waived. See Evid.R 103(A)(1).
Even if Graves had objected and thus preserved this issue for appeal, we find that, as the court in Jells did, the trial court could properly admit Dr. Gaskins as lay opinion testimony pursuant to Evid.R. 701. Her opinion was rationally based on her observation and perception as Rodeisha's family physician and also was helpful to a clear understanding of her testimony and the determination of a fact in issue, namely, the strong bond between Rodeisha and her foster mother. Moreover, even if we characterize Dr. Gaskins' testimony as expert testimony, we find that she possesses sufficient knowledge, experience and training to testify as to the potential adverse effect on Rodeisha if removed from her foster family.
Graves' second assignment of error states:
 THE JUVENILE COURT ERRED BY GRANTING PERMANENT CUSTODY OF RODEISHA GOOLSBY TO CCDCFS WHEN SUCH DECISION WAS NOT IN THE BEST INTEREST OF THE CHILD AND CCDCFS FAILED TO MAKE A GOOD FAITH EFFORT TO PLACE THE CHILD WITHIN THE FAMILY.
Graves contends that the court granted permanent custody of Rodeisha to CCDCFS against the best interest of the child, and despite the agency's failure to make a good faith effort to reunify Rodeisha with her mother. CCDCFS counters that the record supports the court's determination regarding permanent custody, and further asserts that it is not required to consider relatives for placement.
The issue here then concerns whether the trial court erred in granting permanent custody against the best interest of the child and despite CCDCFS's alleged failure to reunify Rodeisha with her mother or to place the child with the extended family.
We consider first the issue of the best interest of the child. R.C. 2151.353 provides the guidelines for disposition of an abused, neglected or dependent child:
 2151.353(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
* * *
 (4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child. If the court grants permanent custody under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding.
R.C. 2151.414 provides the standard for determining the best interest of a child:
 (D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section * * * the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
Finally, when a public children services agency files a motion for permanent custody, R.C. 2151.414(B) requires that the court determine, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency.
We begin our review by noting that the testimony of two expert witnesses, Dr. McDavid and Dr. Needlemen, is not part of the record before our court. This is further evidence of the inability of the trial court to provide an adequate record for appellate review and points to the need for a change in the manner of recording juvenile proceedings — the administrative judge and the judges of the court should strongly consider court stenographers to discharge the requirement of Juv.R. 37:
 (A) Recording of proceedings. The juvenile court shall make a record of adjudicatory and dispositional proceedings in abuse, neglect, dependent, unruly, and delinquent cases [and] permanent custody cases; * * * The record shall be taken in shorthand, stenotype, or by any other adequate mechanical, electronic, or video recording device. (Emphasis added.)
Plainly, the record presented to our court in this case does not meet the mandate of Juv.R. 37, and is another example of the court's failure to make a complete record of the proceeding in these important cases.
Despite the absence of that testimony, however, which presumably would be beneficial to the agency, our review of the record here reveals that the court removed five-month-old Rodeisha from Graves' home, and after two unsuccessful foster placements, placed her with her present foster parents at the age of eleven months, sometime in April, 1998. The evidence also indicates that Rodeisha has a strong bond with her foster family, that she regards her foster mother as her mom and the latter's other children as her brothers and sisters, and that she became upset when Graves wanted Rodeisha to call her mommy. Accordingly, we have concluded the record contains sufficient evidence to sustain the trial court's conclusion that granting permanent custody to CCDCFS is in her best interest.
Next, we consider the issue of whether the trial court erred in granting permanent custody despite CCDCFS's alleged failure to make a good faith effort to reunify the parent and the child before seeking permanent custody.
R.C. 2151.353 provides that a court can commit a child to the permanent custody of a children services agency if the court determines that it is in the best interest of a child pursuant to R.C. 2151.414(D) and that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent pursuant to R.C. 2151.414(E), which states, in pertinent part:
 (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
Here, Graves admitted that she had not completed her case plan even though it had been two years since Rodeisha had been removed from her care; that she did not have the financial means to take custody of Rodeisha nor did she have stable housing; and that she recently had two positive urine screens. Therefore, the trial court did not abuse its discretion when it found that following the placement of the child outside the home the mother had failed continuously and repeatedly to substantially remedy the conditions that caused the child to be placed outside the home and therefore, the child cannot be placed with the parent within a reasonable time or should not be placed with the parent.
Finally, we note that despite a relative's testimony at the hearing indicating her willingness to take legal custody of Rodeisha, the statute does not require the trial court to consider possible placement within the extended family for the determination of permanent custody. Accordingly, we overrule this assignment of error.
Graves' next two assignments of error concern the granting of legal custody of Rhianna to a relative. The third assignment of error states:
 THE JUVENILE COURT ERRED WHEN IT FAILED TO HOLD BIFURCATED ADJUDICATORY AND DISPOSITIONAL HEARINGS AS REQUIRED BY THE OHIO REVISED CODE AND THE JUVENILE RULES OF CIVIL PROCEDURE.
Graves complains that the court failed to read the allegations against her in its entirety at the hearing regarding Rhianna and further contends that the trial court failed to hold separate adjudicatory and dispositional hearings. CCDCFS asserts that the manner the trial court conducted the proceedings did not materially prejudice Graves, who waived the right to separate hearings because she voluntarily stipulated to both the amended allegations and the amended disposition on the complaint, and because her counsel failed to object to the manner the court conducted the procedure.
The issue for our review then concerns whether the trial court erred in failing to hold bifurcated adjudicatory and dispositional hearings in the matter of Rhianna.
R.C. 2151.35 provides, in pertinent part:
 (B)(1) If the court at an adjudicatory hearing determines that a child is an abused, neglected, or dependent child, the court shall not issue a dispositional order until after the court holds a separate dispositional hearing. The court may hold the dispositional hearing for an adjudicated abused, neglected, or dependent child immediately after the adjudicatory hearing if all parties were served prior to the adjudicatory hearing with all documents required for the dispositional hearing. The dispositional hearing may not be held more than thirty days after the adjudicatory hearing is held. The court, upon the request of any party or the guardian ad litem of the child, may continue a dispositional hearing for a reasonable time not to exceed the time limits set forth in this division to enable a party to obtain or consult counsel. The dispositional hearing shall not be held more than ninety days after the date on which the complaint in the case was filed.
Further, in In re Baby Girl Baxter (1985), 17 Ohio St.3d 229, syllabus, the Supreme Court of Ohio instructed that [i]n proceedings where parental rights are subject to termination, both the Juvenile Rules and the Revised Code prescribe that such proceedings be bifurcated into separate adjudicatory and dispositional hearings. The Court explained the rationale behind the requirement:
 The requirement that the trial court hold bifurcated hearings in cases such as this helps to direct the focus of the initial inquiry into whether a child is neglected or dependent (the allegations in this case) away from the custody issue. See In re Baby Girl Baxter (1985), 17 Ohio St.3d 229, 17 OBR 469, 479 N.E.2d 257, paragraph one of the syllabus (construing and applying R.C. 2151.35 and Juv.R. 29 and 34). (Emphasis added.) In addition, in State v. Glaros (1960), 170 Ohio St. 471,
syllabus, the court instructed that:
 It is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.
Juv.R. 29 provides, in pertinent part:
(D) Initial procedure upon entry of an admission
 The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:
 (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
 (2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.
 The court may hear testimony, review documents, or make further inquiry, as it considers appropriate, or it may proceed directly to the action required by division (F) of this rule.
* * *
(F) Procedure upon determination of the issues
* * *
 (2) If the allegations of the complaint are admitted or proved, do one of the following:
 (a) Enter an adjudication and proceed forthwith to disposition;
 (b) Enter an adjudication and continue the matter for disposition for not more than six months and may make appropriate temporary orders;
 (c) Postpone entry of adjudication for not more than six months;
 (d) Dismiss the complaint if dismissal is in the best interest of the child and the community.
Finally, we note that although strict compliance to Juv.R. 29(D) is not required, courts must substantially comply with the procedures specified therein. In re Terrance P. (1998), 129 Ohio App.3d 418, 425. See, also, In re: Taylor (June 8, 2000), Cuyahoga App. No. 76429, unreported.
In this regard, Graves correctly points out that permanent custody determination requires bifurcated adjudicatory and dispositional proceedings. However, Graves' parental rights were not subject to termination, because the proceeding had been amended to one for legal custody to a relative. Moreover, the bifurcation requirement, as the Supreme Court of Ohio explained, is necessitated by the need to direct the focus of the initial inquiry into whether the child is neglected or dependent and away from the custody issue. Such a need does not exist in the instant case, because Graves admitted the allegations of the amended complaint and further agreed to transfer legal custody of Rhianna to a relative; Baxter, accordingly, can easily be distinguished from the instant case.
Furthermore, even if we read R.C. 2151.35 to require bifurcated proceedings even where parental rights were not subject to termination, Graves' counsel did not call the trial court's attention to or raise any objections to the manner in which the trial court conducted the proceeding at a time when such error could have been corrected by the trial court. Thus, Graves waived whatever rights she may have had in this regard.
Graves also contends that she did not hear the complaint against her in its entirety. Reviewing the record, we find that the trial court substantially complied with Juv.R. 29. The court addressed Graves directly, explained the rights she waived by admitting to the allegations contained in the complaint as amended, and satisfied itself as to the voluntary nature of her admissions and her agreement to a transfer of legal custody of Rhianna to Barbara Emerson.
Based on the foregoing, we find that Graves has failed to show any reversible error and we overrule this assignment of error.
The fourth assignment of error states:
 APPELLANT WAS PREJUDICED BY INEFFECTIVE ASSISTANCE OF COUNSEL.
Graves contends that her counsel (1) failed to address the issues raised [in the brief] and (2) allowed the hearing regarding Rhianna to go forward without properly advising her as to the ramifications of her actions thereby denying her effective assistance of counsel. CCDCFS counters that she fails to demonstrate any evidence to support her claim of ineffective assistance of counsel.
The issue then concerns whether ineffective assistance of counsel prejudiced Graves. The United States Supreme Court set forth the standard or review for a claim of ineffective counsel in Strickland v. Washington (1984), 466 U.S. 668, adopted by Ohio in State v. Bradley (1989),42 Ohio St.3d 136. To establish such a claim, the defendant must first show that counsel's representation fell below an objective standard of reasonableness." Strickland, supra, at 687-688. Second, to warrant a reversal, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694.
Here, Graves makes a general claim that her counsel, Mr. Hyland, fell below the objective standard of reasonableness by failing to address the issues above, without any demonstration of how counsel's representation fell below an objective standard of reasonableness. Since she failed to set forth any specifics to establish the first prong of an ineffective counsel claim, she has failed to carry her burden of demonstrating error and we decline to rule in her favor.
In addition, Graves claims that she did not have effective counsel for the hearing on Rhianna because her counsel did not properly advise her of the ramifications of her actions and the risks involved in admitting to the amended complaint.
A review of the record indicates that Graves' counsel had discussed the matter with Graves and reached an agreement with CCDCFS to amend the original complaint, such that Graves agreed to admit the allegations as amended and CCDCFS agreed to a change of its request from termination of parental rights to legal custody of Rhianna to a relative. In addition, during the proceeding, the court addressed Graves directly and ensured that (1) Graves knew about the rights she surrendered by admitting to the allegations and that (2) she agreed that Rhianna was to be placed with Barbara Emerson. Therefore, with regard to this ineffective assistance of counsel claim, we have determined that Graves has failed to show deficient performance by counsel. Accordingly, we overrule the fourth assignment of error.
The judgment of the trial court is affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing Juvenile Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ____________________ O'DONNELL:
JAMES D. SWEENEY, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR